# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, ex rel. )<br>JEREMIAH W. (JAY) NIXON, )<br>Attorney General, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PROGRESSIVE BUSINESS )<br>PUBLICATIONS, INC., )<br>)<br>Defendant. ) | No. 06-5046-CV-SW-FJG |

## ORDER

Pending before the Court are (1) Plaintiff's Motion to Remand (Doc. No. 9); and (2) Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. No. 13). Each will be considered below.

**I.  Background**

On or about November 21, 2005, plaintiff filed this action in the Circuit Court of Lawrence County, Missouri.  Within its state court petition, plaintiff asserts that defendant transmitted facsimile advertisements to certain Missouri residents in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  Plaintiff further asserts that the defendant's alleged violations of the TCPA constitute an unfair practice under the Missouri Merchandising Practices Act ("MPA").  Defendant was served with the petition on or after April 6, 2006, and filed its notice of removal on May 5, 2006.

**II.  Plaintiff's Motion to Remand (Doc. No. 9)**

Plaintiff has moved to remand this case to state court, stating that the Missouri Attorney General filed this lawsuit to enforce a state law, the Missouri Merchandising Practices Act ("MPA"), and plaintiff asserts that although the petition made a passing

reference to a federal law, that does not create a federal question. Plaintiff indicates that it is not attempting to enforce the federal Junk Fax Prevention Act of 2005 [47 U.S.C. § 227(b)(1)(C)] and the Telephone Consumer Protection Act ("TCPA"); rather, plaintiff states that it is simply alleging that defendant has violated the TCPA and that such violation constitutes an unfair practice under the MPA. Plaintiff further asserts that, even if this Court found that a federal cause of action was pled on the face of the petition, this Court should remand all issues in which state law predominates (see 28 U.S.C. 1441(c)), and plaintiff states that "it is evident that questions of law and fact under the MPA predominate any issue which might, arguably, give rise under 28 U.S.C. § 1331 for jurisdiction of this Court, and this case should therefore be remanded."

As a preliminary matter, the Court notes that 28 U.S.C. § 1441(c) does not stand for the proposition that an entire case can be remanded if state issues predominate; instead, that statute allows the district court, in its discretion, to remand separate and independent claims in which state law predominates, while retaining jurisdiction over any remaining claims that allege a federal question. Further, this Court agrees with defendant's assertion that plaintiff has attempted to disguise a purely federal claim (i.e., a violation of the TCPA) as a state law claim in order to avoid federal court jurisdiction. See M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs, 930 F.2d 608, 611 (8th Cir. 1991). Further, and notably, the TCPA provides that "The district courts of the United States . . . shall have exclusive jurisdiction over all civil actions brought under this subsection." 47 U.S.C. § 227(f)(2). On the face of plaintiff's petition, plaintiff alleges that defendant's conduct "violates the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227(b)(1)(C)," and that "[b]y violating the Telephone Consumer Protection Act, Defendant has also violated the Missouri Merchandising Practices Act, § 407.020, RSMo 2000, in that violating that federal Act constitutes an unfair practice under the Missouri Merchandising Practices Act." Given the content of plaintiff's petition, plaintiff has obviously pled a federal question on the face of

the petition, and the case was properly removed by defendant pursuant to 28 U.S.C. §§ 1331 and 1441. Plaintiff's motion to remand (Doc. No. 9) is **DENIED.**

### III. Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. No. 13)

Defendant moves to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for entry of summary judgment in its favor. Defendant states that the grounds for its motion are (1) the facsimiles identified in the complaint were not unsolicited, and therefore not in violation of the Junk Fax Prevention Act or the TCPA; (2) the MPA and TCPA are not interchangeable and serve different remedial goals; (3) plaintiff's allegations under the MPA are unconstitutional under the Supremacy Clause, as the TCPA preempts state statutes; and (4) plaintiff's application of the MPA in this matter violates the Dormant Commerce Clause, as the MPA discriminates against interstate commerce and serves no legitimate local purpose unrelated to economic development. These grounds will be considered below.

#### A. Standards

##### 1. Motions to Dismiss

Rule 12(b)(6) governs dismissals for failure to state a claim upon which relief can be granted. The Court, in ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, will not consider any matters outside the pleading. Fed.R. Civ. P. 12(b)(6). To clarify, matters excluded as outside the pleading include "'any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings....' [Therefore,] a 12(b)(6) motion will succeed or fail based upon the allegations contained in the face of the complaint." Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) (quoting and agreeing with Wright & Miller, Federal Practice and Procedure § 1366).

"A motion to dismiss for failure to state a claim should be granted only if it is clear that no relief could be granted under any set of facts, construing the allegations in the

3

complaint favorably to the pleader." County of St. Charles, Mo. v. Mo. Family Health Council, 107 F.3d 682, 684 (8th Cir. 1997) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997). "Thus, '[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Leiberkneckt v. Bridgestone/Firestone, Inc., 980 F. Supp. 300, 304 (N.D. Iowa 1997) (quoting Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)) (alteration in original).

        2.     Motion for Summary Judgment

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the

4

disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

**B.    Facts**[1]

In plaintiff's state court petition, the only named complainants are Interstate Sewage Treatment Company and ACE Learning Centers. See State Court Petition, Exhibit to Doc. No. 1, ¶¶ 17, 18. Plaintiff alleges that Interstate Sewage Treatment Company received more than one unsolicited fax from defendant from June 22, 2005 through the date of the filing of the petition. See id. ¶ 17. Plaintiff further alleges that ACE learning Centers received at least two unsolicited faxes through the date of the filing of the petition. Id. ¶18. Defendant, however, asserts that both named complainants had an established business relationship with defendant prior to their alleged receipt of facsimiles.

Interstate Sewage Treatment Co. ("Interstate"), through its representative Paul Heath, placed orders with Progressive on June 8, 2004 and September 27, 2001. See Declaration of Edward M. Satell, attached as Exhibit B to Doc. No. 14 ("Satell Declaration")

---

[1]This statement of facts relates only to the issues raised in defendant's motion for summary judgment, relating to whether the fax recipients had an established business relationship with defendant.

5

at ¶¶ 5-13.[2] Specifically, Mr. Heath from Interstate ordered from Progressive the newsletter, "CFO & Controller Alert," on June 8, 2004 and the newsletter, "What's Working in Credit and Collections," on September 27, 2001. Id. at ¶¶ 6, 10. When he placed each of these orders, Mr. Heath also provided to Progressive the month and day of his birthday as December 20 and provided Progressive his fax number. Id. at ¶¶ 7, 11.[3] On both of the days Mr. Heath placed his orders on behalf of Interstate, Progressive sent him a fax confirming the Interstate orders. Id. at ¶¶ 8, 12. These faxes also confirmed Progressive's prior telephone conversations with Mr. Heath. See Letters to Mr. Heath from Progressive account representatives, attached as Exhibit C to Doc. No. 14.[4] Progressive also mailed

---

[2]In its suggestions in opposition, plaintiff argues that Mr. Satell's assertion in Exhibit B that he is executing his Declaration under penalty of perjury under the laws of the United States of America is insufficient because the Declaration was not witnessed by another individual nor was it executed before a notary public. However, the Court notes that unsworn declarations made under penalty of perjury can be considered in support of motions for summary judgment. See 28 U.S.C. § 1746. Further, in defendant's reply, defendant attaches a supplemental affidavit (witnessed by a notary) that makes the same statements as the original declaration. See Supplemental Affidavit of Edward Satell, attached to Doc. No. 21 as Ex. A. Accordingly, the Court will consider the statements made by Mr. Satell in reciting the facts.

[3]In opposition, plaintiff does not challenge the accuracy of the month and day of Mr. Heath's birthday or his fax number; instead, plaintiff states that defendant has provided no corporate records confirming Mr. Satell's assertion that this information was provided to defendant. In reply, defendant notes that Mr. Satell, as custodian of defendant's business records, has personal knowledge of defendant's business operations, and has attached further records reflecting the customers' names, birthdays and fax numbers. See Ex. A to Doc. No. 21, ¶¶ 5, 11, 16, and 22 and exhibits attached thereto. As plaintiff has not refuted the information provided by defendant, the Court will consider the statements made in Mr. Satell's declaration in its recitation of the facts.

[4]In opposition, plaintiff challenges defendant's declaration by stating that defendant did not attach "order forms," but attached "order confirmations," as though an "order form" would be the only appropriate document. Further, plaintiff notes that Mr. Satell is not representing that he personally took any orders from Mr. Heath at Interstate, but rather that the first page of Exhibit C appears to have been generated by

6

three newsletter issues to Mr. Heath at Interstate in 2004, on June 10, June 30, July 15, and one invoice on July 1, 2004. Id. at ¶ 9. Progressive also mailed to Mr. Heath at Interstate three newsletters in 2001, on October 8, October 19, November 2, and one invoice for the newsletters on October 19, 2001. Id. at ¶ 13.[5]

ACE Learning Centers ("ACE") also had an existing business relationship with defendant, and similarly had given permission to Progressive prior to the faxing at issue herein. See Ex. B at ¶¶ 14-18. Specifically, ACE's Director of Operations Larry Milam placed an order with Progressive on April 12, 2005 for the newsletter, "Legal Update for Teachers." Id. at ¶ 15. When he placed this order, Mr. Milam also provided to Progressive the month and day of his birthday as February 25 and provided his fax number. Id. at ¶

---

a person representing herself as "Susan Pinizzotto" and the second page of Exhibit C appears to have been generated by a person representing himself as "John Bisceglie." In reply, defendant attaches Mr. Satell's supplemental affidavit where he testifies based on his knowledge from the company's business records and his responsibilities in overseeing the company. Ex. A at ¶¶ 2-4. Satell notes that the particular account representatives took telephone orders for newsletters from Interstate Sewage and ACE Learning Centers, only sending a confirmation after an order was placed. See Satell Aff., Ex. A, at ¶¶ 5-24 and exhibits attached thereto. As plaintiff has not rebutted the information provided by defendant, the Court again will consider the statements made in Mr. Satell's declaration in its recitation of the facts.

[5]In opposition, plaintiff asserts that defendant has not sufficiently supported its declaration in that it did not attach copies of the invoices or actual newsletters Mr. Heath receipted from defendant on June 10, 2004, June 30, 2004, July 15, 2004, October 8, 2001, October 19, 2001, and November 2, 2001, no such newsletters accompany Mr. Satell's declaration. Again, in reply, defendant notes that plaintiff does not refute the information provided in Mr. Satell's declaration, and defendant further notes that attaching entire copies of the publications ordered would be unreasonable under the circumstances of this case. As plaintiff has not rebutted the information provided by defendant, the Court again will consider the statements made in Mr. Satell's declaration in its recitation of the facts.

7

16.[6] On the same day that Mr. Milam placed his order on behalf of ACE, Progressive sent him a fax confirming the ACE order. Id. at ¶ 17. This fax also confirmed the defendant's prior telephone conversation with Mr. Milam. See Letter to Mr. Milam from Progressive account representative, attached to Doc. No. 14 as Ex. D.[7] Progressive also mailed two newsletter issues on April 13, 2005 and April 25, 2005, and one invoice for the newsletters on April 25, 2005. Id. at ¶ 18.[8]

**C. Discussion**

> 1. Facsimiles Identified in the Complaint did not Violate the TCPA in that the Complainant and Defendant had an Established Business Relationship

The TCPA makes the sending of unsolicited fax advertisements unlawful. However, if the facsimile recipient has an "established business relationship" with the sender, the facsimile is not considered unsolicited. See Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,

---

[6] Again, plaintiff does not challenge the accuracy of the month and day of Mr. Milam's birthday or his fax number; instead, plaintiff states that defendant has provided no corporate records confirming Mr. Satell's assertion that this information was provided to defendant. In reply, defendant notes that Mr. Satell, as custodian of defendant's business records, has personal knowledge of defendant's business operations, and has attached further records reflecting the customers' names, birthdays and fax numbers. See Ex. A to Doc. No. 21, ¶¶ 5, 11, 16, and 22 and exhibits attached thereto. As plaintiff has not refuted the information provided by defendant, the Court will consider the statements made in Mr. Satell's declaration in its recitation of the facts.

[7] Again, although plaintiff attempts to question the use of an "order confirmation" instead of an "order form," and again suggests that Mr. Satell did not personally take the alleged order, for the same reasons as stated in footnote 4, above, the Court will consider the statements made in Mr. Satell's declaration in its recitation of the facts.

[8] Again, although plaintiff attempts to question defendant's purported failure to attach copies of the newsletters sent to the complainant as well as the invoices sent to the complainant, for the same reasons as stated in footnote 5, above, the Court will consider the statements made in Mr. Satell's declaration in its recitation of the facts.

8

323 F.3d 649, 657 (8th Cir. 2003) ("Am. Blast Fax II") (noting that under the FCC's regulations that have been in place since 1992, "The FCC has interpreted the TCPA not to prohibit the sending of unsolicited commercial faxes to a recipient with whom a sender has an established business relationship.") (citing Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C.R. 8752, 8779 n.87 (Oct. 16 1992)); 47 U.S.C. § 227(b)(1)(C)(i) (2005), as amended (effective July 9, 2005)(codifying within the TCPA itself the FCC rule as to established business relationships).

An established business relationship is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5) (2006); 47 U.S.C. § 227(a)(2) (2005). The regulatory definition of "established business relationship" in place at the time of the filing of plaintiff's petition provided that a facsimile advertisement is not unsolicited where a purchase or transaction between the sender and recipient occurred within the eighteen (18) months immediately preceding the facsimile. 47 C.F.R. § 64.1200(f)(3) (versions effective May 13, 2005 to July 31, 2006).[9] As discussed in the statement of facts, above, Interstate's most recent transaction with defendant was on July

---

[9]Current 47 C.F.R. § 64.1200(f)(5) contains no such temporal restriction as to facsimiles; however, current 47 C.F.R. § 64.1200(f)(4) provides for an eighteen month temporal restriction as to telephone solicitations.

9

15, 2004, whereas ACE's most recent transaction was on April 25, 2005; thus, at the time of the filing of plaintiff's petition (November 21, 2005), both were within the eighteen month window established by the regulations.

Therefore, defendant notes that, as detailed in the statement of facts, above, the complainants in the present action both had established business relationships with defendant prior to their alleged receipt of the facsimiles at issue in this matter. Thus, defendant states that the faxes cannot be characterized as unsolicited, and the plaintiff has no claim for a violation of the TCPA.

In response, plaintiff argues that defendant is attempting to place unsupported limitations on the MPA, and quotes at great length from R.S.Mo. § 407.020 as well as various state regulations without providing any analysis as to how the state laws would apply to prevent dismissal of plaintiff's claims that defendant's actions violate the TCPA. Plaintiff further argues, as noted above in conjunction with the statement of facts, that there are "certain omissions which, rather than establishing that Defendant had an established business relationship with Interstate, instead raise questions and serve as the basis for Plaintiff's position that there exist issues of fact and law for the Court to decide in this litigation." Notably, plaintiff does not actually controvert any of the facts presented by defendant in Mr. Satell's Declaration and Affidavit; instead, plaintiff's challenges all go to the form of the Declaration/Affidavit and/or whether defendant has provided the best evidence of its facts.

In reply, defendant notes, and this Court agrees, that it has adequately met its burden on summary judgment of proving that no genuine issue of material fact remains to be decided as to plaintiff's claims of violations of the TCPA. Defendant is not liable for

10

violations of the TCPA because the uncontroverted evidence establishes that an established business relationship existed between defendant and the complainants. Thus, all of plaintiff's claims that defendant violated the TCPA and such violation also constituted a violation of the MPA must be dismissed. As all of plaintiff's claims relate to the TCPA and purported violations thereof (see ¶¶ 19, 20, and 21(a), (b), (c), and (d)), defendant's motion for summary judgment (Doc. No. 13) is **GRANTED** as to all claims.

2. Defendant's Assertion that the TCPA and MPA have Different Remedial Goals and are not Statutory Surrogates

Further, and in the alternative, defendant argues that the MPA is not a statutory surrogate for the TCPA, and, as the sending of facsimile advertisements is not the sort of action that is tainted by conventional unfair practices/consumer fraud, the MPA is not applicable to claims regarding unsolicited fax advertisements. See Ports Petroleum Co., Inc. of Ohio v. Nixon, 37 S.W.3d 237, 241 (Mo. banc. 2001) (MPA not applicable to commercial pricing of gasoline because such sales "are not those tainted by conventional unfair practices/consumer fraud, which the MPA addresses"). As noted by the defendant, the MPA defines an "unlawful practice" as an act "of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement" of merchandise in trade or commerce, or soliciting funds for a charitable purpose. R.S.Mo. § 407.020. See also State ex rel. Nixon v. Telco Directory Publ'g, 863 S.W.2d 596, 601 (Mo. 1993) (noting purpose of MPA is "to protect consumers from fraudulent business practices"). On the other hand, as noted by defendant, the TCPA was enacted to protect the "privacy interests of residential telephone subscribers" and to facilitate interstate commerce. S. Rep. No.

11

102-178, 102d Cong., 1st Sess. (1991). Defendant states that the United States Congress never indicated that unsolicited faxes per se are misleading or deceptive.

Additionally, plaintiff has alleged that defendant has misrepresented, "directly or by implication, to Missouri consumers that the fax messages were sent in accordance with federal law, when, in fact, sending of unsolicited advertisements via telephone facsimile machine violates 47 U.S.C. § 227." Petition at ¶ 21(a). As noted by defendant, however, "A statement of what the law will or will not allow to be done is a matter of opinion, albeit on a legal matter" and cannot be deceptive as a matter of law. Frederick v. Bensen Aircraft Corp., 436 S.W.2d 765, 770 (Mo. Ct. App. 1968). This Court agrees that paragraph 21(a) of plaintiff's petition is a statement of law that cannot be considered a misrepresentation.[10]

Further, to the extent that plaintiff claims that misappropriating and converting facsimile recipient's paper, toner, and facsimile machine without the recipient's permission is an unfair practice, this Court agrees with the District Court of the Northern District of Illinois that such activities do not by themselves implicate state unfair trade practices laws because "the burden imposed by [the faxing entity] can hardly be characterized as unreasonable, nor does it deprive [the recipient] of a meaningful choice." See Western Railway Devices Corp. v. Lusida Rubber Products, Inc., 2006 WL 1697119, *7 (N.D. Ill. 2006).

In sum, plaintiff's attempt to couch its TCPA claims within the MPA is improper, as

---

[10]Further, as discussed previously, defendant did not "misrepresent" that the faxes were being sent in accordance with federal law, or that there was an agreement between the parties that the faxes could be sent; instead, defendant's fax advertisements were not unsolicited under the TCPA. Further, plaintiff's claim in ¶ 21(d) of its petition that defendant continued to send unsolicited facsimiles to complainants is not cognizable, as under the TCPA the facsimiles were not unsolicited.

12

the activities targeted by plaintiff are not the sort of actions that are tainted by conventional unfair practices or consumer fraud. Thus, these actions are not covered by the MPA. Plaintiff's claims, as pled in its petition, should be dismissed for failure to state a claim upon which relief can be granted. Therefore, for this additional reason, defendant's motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 13), is **GRANTED**.

### 3. Supremacy Clause and Dormant Commerce Clause

As the Court has already found that the first two grounds raised by defendant both support dismissal of this matter, the Court does not reach defendant's arguments that (1) the TCPA preempts application of the MPA as to interstate facsimiles and (2) the Attorney General's attempted application of the TCPA through the MPA violates the Dormant Commerce Clause.

## IV. Conclusion

For all the foregoing reasons:

(1) Plaintiff's Motion to Remand (Doc. No. 9) is **DENIED**; and

(2) Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. No. 13) is **GRANTED**. The pending action is **DISMISSED.**

**IT IS SO ORDERED.**

  /s/ FERNANDO J. GAITAN, JR.
Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 2/26/07 .
Kansas City, Missouri.